## M'Kee *against* Lamberton.
## Chew *against* Young.
## M'Call *against* Larimer.

A defendant in ejectment claiming title under a treasurer's sale for the payment of taxes, is not entitled to recover compensation for the value of his improvements, if his title be defeated on the ground that the land was not unseated at the time the taxes were assessed upon it, and for the payment of which it was sold. Nor is a subsequent purchaser in any better situation than the vendee of the treasurer.

THE heirs at law of James M'Kee and Eleanor M'Kee, deceased, against John Lamberton and David M'Clelland. Writ of Error to the District Court of *Venango* county. Archibald M'Call against Alexander Larimer's heirs at law. Writ of error to the Special Court of *Butler* county; and Benjamin Chew against Robert Young. Writ of Error to the Common Pleas of *Butler* county.

Each of these cases presented the same question. The legal title was in the plaintiff, and the defendant in each case claimed under a treasurer's sale of the land as unseated for the payment of taxes, made under the Act of 1815. Upon the trial of the causes, it appeared that the lands were not unseated at the time the taxes were assessed upon them, and for which they were sold; and that the defendants had made valuable improvements. It also appeared, in the case of M'Kee against Lamberton, that David M'Clelland had purchased part of the land from Lamberton, for a valuable consideration.

The court below, in each case, gave in substance the following instruction to the jury:—

" Was the land seated during the years for which it has been sold for arrearages of taxes as unseated? The testimony of the plaintiff proves that it was. If the jury believe that it was seated

during the years that it was assessed with taxes, and sold as unseated, the treasurer's deed is invalid and vests no title in the defendant; and the plaintiff is entitled to recover, if his patent embraces the land in controversy. The case is then narrowed down to the question of the value of the improvements. I must confess that until the recent decisions of the Supreme Court, I had entertained the opinion that where the county commissioners had no jurisdiction over the land, where it was not subject to taxation for county rates or levies, or where it was seated and taxed as unseated, a sale made on assessment with taxes in violation of the law, and against law, would not and could not subject the owner to pay for improvements made under a sale for taxes; and a deed made, where the officers making the assessment and sale had no authority or power to assess or sell, and where the owner was guilty of no laches on his part, or omission of any duty which the law required of him; but in this opinion I have been in error. The court, in the last resort, have decided that the donation land of a Revolutionary soldier, although not liable to be taxed, if taxed and sold, that the purchaser at treasurer's sale is entitled to recover the value of the improvements made on the land, although the treasurer's deed is totally invalid. In this case, the court instruct you that the defendant is entitled to receive from the plaintiff the value of the improvements made by the defendant on the land, under the treasurer's deed; your verdict will be for the plaintiff, finding also the value of the improvements made by the defendant on the land, under the treasurer's deed."

*Biddle*, with whom was *Pearson, Findlay,* and *Gilmore,* for the respective plaintiffs in error.

1. It will hardly be denied that the claim, if it exist at all, after the real owner has established his title in ejectment, must rest on a statute. It has no support in the common law. In the absence of express legislative provision, the courts—however hard the case —would sternly interdict to a jury any such indulgence of its sympathies. The highest judicial tribunal of the country has had occasion to pass upon an attempt thus to clog and encumber the plaintiff's recovery (8 *Wheat.* 75, 76). In that case, it was urged upon the court by Mr Bibb, that the Statute " went merely to allow the grantee from the commonwealth, who, under faith in his grant, has made valuable and lasting improvements, the amount of those improvements." " That the principle of the Act is a principle of natural equity and justice, as to permanent improvements by a *bonâ fide* possessor." In 5 *Johnson* 272, it was decided that an express promise to pay for improvements was *nudum pactum,* without consideration, and not to be enforced against the owner of the land. Mr Justice Kennedy, in 6 *Watts*

[M'Kee v. Lamberton.]

443–4, gives a just view of these *improvements,* so much dreaded by owners of property.

It is easy to say that the courts should watch over, and check the tendency to abuse. We know, however, that practically no such effectual restraint is or can be exercised. Though this consideration may not suffice to control the explicit language of the legislature, yet it ought not to be slighted when an effort is made to convert a special statutory provision into a general principle of equity. If money laid out for the use and undeniable advantage of another cannot be recovered, unless a *request* be established, how can the same system of jurisprudence, with any show of consistency, unless compelled by statute, require the owner of land to pay for alleged *improvements* made against his will, and, in a great majority of cases, against his obvious interests?

2. The courts of Pennsylvania have rested the claim to compensation for improvements altogether on the Act of 3d April 1804. The question arose, in 1 *Serg. & Rawle* 38, as to the application of the words "in such cases." Did they apply only to the *immediate* antecedent—recoveries by *minors?* If so, the right to claim for improvements could extend to no *other* case of recovery. This was conceded on all sides. No claim was set up independently of the Statute, however hard or capricious its distinctions might appear. The Supreme Court held that the words applied not merely to minors, but to adults. "I see no objection," says Chief Justice Tilghman, "to such a construction; so far from straining the expressions, it gives them the meaning which they naturally bear; for being placed in the conclusion of a sentence, in the preceding part of which had been mentioned not only the sale of lands belonging to minors, but also to adults, the reference should be understood as extending to recoveries in *all the cases before mentioned.*"

The Act of 13th March 1815, effected an entire revolution in this matter of tax sales. The right to redeem, on certain conditions, within two years, was reserved to every owner, however regular the proceedings. This provision was unknown to the Act of 1804. But it was sternly declared that no irregularity should invalidate the sale. It will be seen that the same question occurs for adjudication as under the Act of 1804. What are the "such cases" in which a right to recover, under the Act of 1815, is subjected to the condition of paying for improvements? The Act provides for a recovery in two cases: 1. Where the tax was paid prior to the sale; 2. Where the tax, with 25 per cent. advance, shall be paid within two years after the sale. There is allowed to *orphans* two years after disability removed to prosecute their claim. Does the proviso, as to the necessity of paying for improvements, apply only to this last case, with which it is more immediately connected? This construction was urgently pressed in 3 *Watts* 106.

II. — K

[M'Kee v. Lamberton.]

In that case, the recovery was on the ground that the tax had been paid before the sale. This is one of the cases expressly provided for in the 4th section; and the moment the court decided that the words requiring compensation for improvements ("in such cases") in the proviso of that section, extended to *all* the cases set forth in the section, the conclusion became inevitable. Recovery and compensation are indissolubly united. The court could not separate what the law had joined together.

3. Let us now turn to the case of a sale for taxes, under the Act of 1815, and a recovery afterwards by the owner, but *not* on any of the grounds specified in the fourth section of the Act of 1815. The case before the court—the sale of a seated tract—is the most striking of these. The right of the owner to recover, is established by repeated decisions. 13 *Serg. & Rawle* 151; 1 *Watts* 50; 2 *Watts* 125; 5 *Watts* 382; 5 *Watts* 441. But he does not recover by virtue of any provision in the fourth section of the Act of 1815. He stands on higher ground. "The land being seated," says Chief Justice Gibson, in 10 *Watts* 393, "was not within the power given to the county commissioners and their treasurer. The whole proceeding being *coram non judice,* was void." How can his recovery be clogged with payment for improvement? Only by saying that here is one of the "*such* cases" of recovery specified in the fourth section of the Act of 1815; yet this is not only contrary to the plain words of the law, but to the judicial exposition in *Gilmore* v. *Thompson* (3 *Watts* 106), where it was held that the only cases of recovery provided for, and subjected to this burden, are where the tax had been paid *before* the sale, or the tract had been redeemed within two years *after* the sale.

There is, in the Act of 1815, no general provision applicable to *all* cases of recovery. Such a provision *did* exist in that of 1804, the sales being then open to impeachment for irregularity; and on this generality of phrase turned the case in 1 *Serg. & Rawle* 38. It was there held impossible to fix a limit to the "*such* cases," when the antecedent provision was unlimited. Not so, however, with the Act of 1815. That Act cut off *at once,* and peremptorily, all the cases to which the five years' provision of the Act of 1804 was intended to apply. It *extinguished* such claims, whilst the preceding Act operated upon them only as a Statute of Limitations. It declares that "*no* alleged irregularity in the assessment, or in the process, *or otherwise,* shall be construed, or taken, to affect the title of the purchaser, but the same shall be declared to be good and legal." After specifying the two cases in which a recovery might be had, viz., payment of the tax before the sale, and redemption within two years after the sale, it declares emphatically, "but in no other case, and on no other plea, shall an action be sustained." The Act then goes on to allow

[*M'Kee v. Lamberton.*]

compensation for improvements where a recovery is had " in *such* cases." What cases? Can the words be tortured to mean any thing beyond what had been just before specified as the *only* two cases in which a recovery could be had? Nobody pretended, in 1 *Serg. & Rawle* 38, or in 3 *Watts* 106, that the court, in seeking the antecedent for " *such* cases," could go beyond the statute, in order to hunt up such cases which were confessedly *not* enumerated or thought of. The attempt was merely to limit the provision about improvements to one particular class, viz.: a recovery against *minors,* under the Act of 1804, and against *orphans,* under that of 1815. Suppose the court to have held, in those cases, that the statutory claim for improvements was confined to the case of a recovery against minors and orphans, would any pretence have been then advanced—so far as we can infer—that the improver could claim against an adult? Surely not. This would be to declare the discussion and the decision in those cases, altogether idle and unmeaning. We are compelled to recognise the universal concession, that claims for improvements are the mere creatures of positive enactment, and that unless the provision for compensation can be clearly coupled with the identical case of recovery then in hand, the courts cannot fetter or qualify the right of a plaintiff who has made out his case in ejectment.

It is true, the same *rule of construction* has been applied to the statutes of 1804 and of 1815, with regard to the efficacy of relative terms, whether placed in the middle or conclusion of a sentence. But to ascertain what classes or objects are comprehended by the reference, we must, of course, resort to the enumeration in each statute. How can it be said that *other* cases of recovery than those enumerated in the 4th section of the Act of 1815, were in contemplation, when that very section anxiously negatives the existence of any other? It did not look to, or provide for, a case where *seated* land should be sold under a power over *unseated* land; that being a case of clear usurpation, and utterly void.

The case in 6 *Watts* 435, may here be noticed. That was the sale of a donation tract, owned by the original grantee, and consequently not subject to taxation. It was held (Kennedy J. earnestly protesting) that the owner must pay for improvements. The process of reasoning is this: that the land was unseated; that the exemption in favour of the original grantee was special, and indeed personal; that the commissioners, being authorized to sell *all* unseated lands, had jurisdiction; and that, having jurisdiction, the case in 3 *Watts* 106 was decisive that improvements must be paid for. Now, it is submitted, with the greatest deference, that this last and indispensable link in the chain of argument, is fatally defective. *Gilmore* v. *Thompson* did *not* turn on the question of jurisdiction. Nothing is said or hinted at on that point in the opinion of the court. It proceeds on the plain, undeniable matter of fact, that the right

[M'Kee v. Lamberton.]

to recover in that case was expressly given in the 4th section of the Act of 1815, and must be exercised subject to the condition there imposed of payment for improvements. " As satisfaction of the *duty*," says Chief Justice Gibson, in *Gilmore* v. *Thompson*, " gives, on the one hand, an equal right of recovery, whether it were *before* the sale or *after* it, so does it, on the other, give an equal right to compensation." The owner of the donation tract did not fall within *either* of the cases of recovery to which a claim for compensation is attached by the Act of 1815. There was no duty to be satisfied. His land was exempt. It was not a case for paying the tax before the sale or after the sale. *Gilmore* v. *Thompson* sustains the general proposition instead of weakening it, that there can be no claim to compensation, except in the cases provided for by the statute. It is remarkable, that in the case of *Coney* v. *Owen*, the distinction between the Acts of 1804 and of 1815, is lost sight of in the opinion of the majority.

4. It may have been indiscreet to hazard a criticism in the case of *Coney* v. *Owen*, since the distinction there taken is decisive in favour of the plaintiff in error, under the aspect which remains to be presented. There was no jurisdiction on the part of the commissioners. Their special limited authority is confined to *unseated lands*. The commissioners had no more right to sell a seated tract, than to sell a horse, or any other chattel. The argument of the majority of the court, in *Coney* v. *Owen*, conducts to the decision we now ask. In 13 *Serg. & Rawle* 371, Chief Justice Tilghman says: " It is necessary that the lands should be *unseated* to make the sale good, because the whole system is confined to *unseated* lands; nor have the commissioners, or any other persons, authority to *take a single step leading to the sale of any other lands than those which are unseated*." In 9 *Watts* 105–6, Chief Justice Gibson says: " The original tract, in this instance, was seated, and the assessor had not cognizance of any part of it; and the tax assessed on this particular lot being illegal, *is to be treated as if it had not been laid*." And again, in 10 *Watts* 393, he says: " The land being seated, was not within the power given to the county commissioners and their treasurer. The whole proceeding, being *coram non judice*, was void." In the case last mentioned, an attempt was made to liken a sale by the commissioners to a sale by the sheriff. But it was answered by the judge who delivered the opinion, that this analogy, even if it existed, would not answer the purpose. " Take it that there has been no judgment, or that the court had not jurisdiction, it would not be contended, even under the statute which quiets his title on a reversal of judgment, that the vendee could hold the land. In the first of the cases put there would be no judgment to reverse; and in the second, the judgment and execution being void, would pass no title." It is true, that where the court has

jurisdiction the fact that a judgment was paid off before the sale, will not affect a purchaser (4 *Watts* 424), nor will the death of the defendant before execution (4 *Watts* 367); but a defect of jurisdiction renders all void. 10 *Watts* 120; 9 *Cowen* 229.

The case in 5 *Watts* 350 brought up the point now under consideration, but passed off on the circumstance that the purchaser at the tax sale *knew* the land to be seated, and was, therefore, precluded from a claim for improvements. It is difficult, however, to believe that this could have been deemed, in itself, a firm basis for decision, without a presentiment as to how the principal question must ultimately be settled, when a decision of it should be unavoidable. A purchaser, even cognizant of the condition of the tract, might well leave it to the public agents to pass on the question (often nice and critical) how far a small clearing gave to the whole tract a seated character, or how far land once seated had relapsed, by neglect, into its original condition. Why should *their* error of judgment strip him of a right yielded to *other* victims of the same error? There is no such distinction in the Act. The creation of it by the judiciary would, it is conceived, lead to endless litigation as to the *scienter*, and would operate as a restraint on tax sales, if all who might be proved, or presumed to know any thing of the property, were subjected to a peculiar hazard. And is not *every* one who buys at a tax sale bound to the necessary extent of inquiry? Even a purchaser at sheriff's sale must, at his peril, ascertain the title of a person in possession who has omitted, in contempt of law, to put his deed on record. 1 *Wharton* 318. Yet such possession might well be presumed to be in subordination to the title he was purchasing. Why, then, should a tax purchaser be exempt from a much less complex inquiry, and that, too, on what is known to be the sole basis of his title?

But the broad ground of resistance is, that the Act deals throughout with *unseated* lands. Its letter and its spirit go no further. The authority in the first section of the Act of 1815, is to sell " such tracts of *unseated* land situate in the proper county, as will pay the arrearages of the taxes," &c., and he is to give notice of " *such* sales." By the 4th section, the owner of land " sold *as aforesaid*," may recover on certain terms. We must pervert all the rules of construction to apply such language to a case as incongruous as would be the sale of personal property. This view of the subject, when pressed by Kennedy J., 6 *Watts* 438–9, failed to convince, because the donation tract was really *unseated*, and, therefore, within the general terms of the law. But how can his argument be answered, or eluded, in this case, where the tract was *not* " unseated."

The plaintiff below, being plaintiff here, the court is asked to enter the appropriate judgment, viz: that the assessment of com-

[M'Kee v. Lamberton.]

pensation be quashed and the judgment affirmed, as in 5 *Watts* 350.

*Sullivan, Derrickson, Galbreath,* and *Agnew,* for defendants in error, respectively argued that the words of the Acts of 1804 and 1815, "in such cases," have received a judicial construction; that they embrace all cases in which a recovery is had against one who is in possession under a treasurer's sale; that he is entitled to compensation for his improvements; 1 *Serg. & Rawle* 38; 3 *Watts* 106.

The opinion of the Court was delivered by

SERGEANT, J.—When the case of *Miller* v. *Keene,* (5 *Watts* 350), came under the consideration of this court, it was not necessary to go beyond the particular circumstances of the case, which was that of a purchaser of seated land, sold for taxes, who knew when he purchased, that the land was seated at the time of the assessment and sale. That principle might rule the present cause as far as respects Lamberton; but as to M'Clelland, a sub-purchaser from him four years afterwards, the application of the principle would lead to the consideration how far he is to be visited with constructive notice. It would be difficult, if not impossible, to lay down any rule which could be a guide on such a point, since it is obvious that besides residence in the vicinity of the land, to which the court below seem to have confined it, many things may be constructive notice, that is to say, the means of obtaining knowledge, which the purchaser in the use of ordinary diligence, is bound to adopt. We are, however, of opinion that it is unnecessary to pursue this inquiry, because in no case whatever is the purchaser entitled to compensation for his improvements made on lands purchased at a sale for taxes, where the land was seated at the time of the assessment and sale. This was intimated to be the true construction of the Acts of Assembly on the subject, in the latest case, of *Coney* v. *Owen,* (6 *Watts* 435), and the fullest consideration we have been able to give to it, satisfies us that it is the only interpretation of which the Acts admit. The sale of such land is altogether unauthorized and void, and passes no title or colour of title, it being only unseated lands which the Acts of Assembly authorize to be assessed with taxes, and sold for their payment. In respect to seated lands, there is no jurisdiction given to the assessors to charge the land itself with a tax; the remedy to recover the taxes being against the owner or the occupier personally. Nor is there any jurisdiction or power in the treasurer to sell such land, in any case whatever. If, then, the title in the purchaser is wholly null and void, in consequence of the conveyance being made under an assumed authority, without legal countenance, there is no reason why the intruder into

[M'Kee v. Lamberton.]

such land should compel the owner to pay for the improvements he has chosen to risk upon it, more than when one enters into another's land under a pretended *title*, or by *disseisin* or *trespass*, in which cases it is a long-established principle of law, that he can not. The express tenor, also, of the 4th section of the Act of 24th of March 1815, confines the right to the value of the improvements to those cases in which a recovery is effected under the previous provisions of the Act, which are where the assessors and commissioners had jurisdiction over the subject, and power to sell it because it was unseated, but by reason of the tender of the taxes within two years, or of the owner's having previously paid the taxes, the land is recovered back by the owner, which may embrace other cases within the spirit of these provisions, though not within the express words, as was held in *Coney* v. *Owen*, in the case of a donation tract improperly assessed and sold for taxes. In all these cases the land is unseated; the public officers have jurisdiction over it to charge and sell it; but by reason of certain personal exemptions, or other circumstances, the title is defeasible by the owner. But where the land is unseated there is no jurisdiction: the whole proceedings are a nullity, and no kind of title passes.

Where a tract of land is sold for taxes as unseated, the purchaser has, in most instances, the means of ascertaining whether it is so or not, by inspection of the land, survey, and inquiry : and indeed, he cannot begin to make improvements on it, without being on it, and having an opportunity of scrutinizing into its condition and character. If it is clearly unseated, he may go on and improve it, subject to the terms of the law, of being repaid the value of the improvements in case it is recovered from him. If it is found to have been seated at the time of the assessment, he knows his purchase is invalid, and it is a want of common prudence to proceed with improvements in such case. There are, it is true, extreme cases, in which a very strict inquiry would be necessary to ascertain the character of the tract purchased, as where a few acres have been cleared over into the tract by some adjoining occupant, which has been held to make it seated; or when the sale takes place several years after the assessment, and valuable improvements have been made by the owner during the interval, which is sometimes done, and has led to cases of extreme hardship on the other side, where the tax title has swept all the improvements together with the land. See *Robinson* v. *Williams*, (6 *Watts* 281). Another case may be mentioned, where a subsequent purchaser comes in after a lapse of years, and may be put to difficulty to ascertain whether the improvements existing on the ground were made before or after the assessment of the tax. But even in these instances, with proper caution and inquiry used on the part of the purchaser, the chance of loss could be guarded

[M'Kee v. Lamberton.]

against, and they could not alter the general rule of law applicable to the title.

Lamberton's title being null and void, M'Clelland's title derived from him is no better, and the same principle applies to both.

Judgment reversed so far as respects the value of the improvements, and affirmed as to the rest.