LAMBERTSON & McCLELLAND *v.* HOGAN et al.

The act of April 12, 1842, and March 11, 1843, relative to tax sales, has no effect on cases already adjudicated, for explanatory acts cannot alter or impair vested rights; they are to be so construed as to affect future cases under doubtful statutes.

Where an act of the legislature has received a construction, a remedial act will always be construed to extend to future cases: And *semble*, The legislature have not the constitutional power, by such acts, to impair or affect rights acquired or existing under such a construction.

A purchaser from a vendee at a tax sale, having notice, actual or constructive, by ancient improvements, which puts him on inquiry, that the land was seated, not entitled to retain for improvements made by himself.

ERROR to the Common Pleas of Venango county.

The defendants in error brought ejectment, and having shown title, Lambertson proved a purchase at a tax sale, a sale of part to McClelland, and improvements made by them; it was then shown the tract was improved at the time of the tax sale.   The case is stated on the paper-book to be the same as was decided in 2 Watts &

Serg. 107. Probably that was for part of the same tract. The defendants relied on the acts of Assembly commented on in the opinion of Mr. Justice Rogers. The court instructed the jury, the original purchaser must be considered as having knowledge of the facts; and the purchaser was in the same situation under the acts of Assembly if the improvements were ancient, for that put him on inquiry whether they existed at the time of the tax being laid, in which case neither party was entitled to retain for improvements.

*Dennison,* for the plaintiffs in error, argued that these acts were remedial, and intended to explain the statute which has been construed in 2 Watts & Serg. 107.

*Pearson,* contrà.—Such a construction would make the act most iniquitous, if not unconstitutional, for the title was vested, and this would have the effect of putting a charge on one who was in no default. 5 Watts, 350; 2 Watts & Serg. 107; 4 Serg. & Rawle, 401; 6 Bin. 118; 2 Gall. 105; 3 Bin. 356; 4 Watts & Serg. 223.

ROGERS, J.—A defendant in ejectment, claiming title under a treasurer's sale for the payment of taxes, is not entitled to recover compensation for the value of his improvements, if his title be defeated, on the ground that the land was not unseated at the time the taxes were assessed upon it, and for payment of which it was sold. Nor is a subsequent purchaser in any better situation than the vendee of the treasurer. The point was ruled on the impregnable ground, that the tract being seated, the treasurer has no authority to sell, and, consequently, the title of the purchaser was null and void for want of jurisdiction. Unseated land alone is liable to be sold for payment of taxes. Taxes on seated tracts, and other species of property, are personal charges against the owner. This principle was ruled in three cases, Chew *v.* Young, McCall *v.* Lanmer, McKee *v.* Lambertin, reported in 2 Watts & Serg. 107, and would be decisive of this case, but for two acts of the legislature, one dated the 12th April, 1842, the other, the 11th March, 1843, which it is supposed alters the situation of the parties. This renders it necessary to investigate the application of these acts to the case in hand. The latter act (which it is most convenient to examine first) is entitled, "An act to repeal the Nicholson Court of Pleas, and to release the lien of the Commonwealth on the estate of John Nicholson, deceased." In the second section, the provisoes in the 20th section of the supplement to the act, (the act first cited,) authorizing the governor to incorporate the Tioga Navigation Company, passed the 12th April, 1842, are repealed, and the provisions of the 20th section of the same act,

as to a valuation for improvements, are applied to all cases of improvements made bonâ fide under a tax title. Now, although it is not easy to comprehend how a person can act bonâ fide who improves land, knowing at the time the worthlessness of the title under which he claims, we are spared that question, as it is clear the repealing clause only applies to land formerly belonging to John Nicholson and Peter Baynton. There are reasons for the repeal of those clauses, peculiar to the estates held under those titles, which cannot affect seated lands sold under treasurer's sales, on which improvements have been made, the purchaser being aware that the tax title was not only defective in form, but absolutely null and void. Surely the legislature, whatever may have been the covert design of the draftsmen of the bill, could not intend to deprive minors of the protection afforded their interests by one of the provisions of the act which it is said is repealed. This act was a statute of repose, with the special object of putting at rest certain questions which have vexed the holders of these lands, and the legislature cannot, by a fair construction, be said to have had any thing else in view. It would be dangerous, although general words may be used to extend an act passed beyond the provisions of the statute, as it may have the effect of unsettling a general system, by so construing expressions introduced carelessly, or perhaps for a sinister purpose, into a bill designed to regulate a particular class of cases only. Throwing, therefore, this act out of view, we must next inquire as to the construction of the act of the 12th April, 1842. Has the act any application to this case? It will greatly aid us in arriving at a proper conclusion, to consider the effect of the construction insisted on by the defendant's counsel. Assume whatever disguise it may, the result is, (if we adopt their reading of the statute,) that the legislature has undertaken, without the slightest compensation, to take the property of A. and give it to B. Now, it has been ruled on grounds which cannot be gainsaid, that the government cannot take the property of one citizen for the mere purpose of transferring it to another, even for a full compensation, where the public were not interested in such transfer; and that such an arbitrary exercise of power would be an infringement of the spirit of the constitution, as not being within the power delegated by the people to the legislature. 18 Wend. 14; S. P. in Rawle, 137; and the Mayor, Aldermen and Citizens of Pittsburgh *v.* Scott, decided at this term, 1 Barr, 309. And even for a public use a man's property cannot be taken without just compensation being made. Article ix. 10th sect. Constitution of Pennsylvania. If it cannot be taken for private purposes with compensation, and for public use without compensation, much less can it be taken for private use without an equiva-

lent. *This is so. evidently founded on principles of natural justice and reason as not to need the aid either of argument or authority.

It must be recollected that when this case was in review before, it was decided, after solemn argument, that the defendant on the same state of facts was not entitled to payment for the value of his improvements,—that he had no claim whatever against the plaintiff: it is now urged, that by an omnipotent legislative fiat he has a legal and constitutional right to full compensation. With every respect for that branch of the government, we must take leave to deny that any such authority as is claimed belongs to the legislative power of the state. Thus, suppose a suit is brought by A. against B., and the court should decide that A. was entitled to nothing, would it be competent for the legislature to interfere, and by the flimsy pretext of giving a construction to a previous act on which the question may depend, on the statute of usury, for example, or to a principle of the common law, which amounts to the same thing, enable A. to recover the full amount of his claim. And yet, stripped of the specious pretences with which the argument of the defendant's counsel is clothed, it is precisely what is attempted here. It is proposed, by the substitution of legislative will for right, to compel the plaintiff to pay for improvements, when it is clear, so far as judicial determination can make it so, he was not under an obligation, either legal or moral, to do so, before the passage of the act. In other words, it is seriously contended that the legislature, in the plenitude of their generosity, have transferred the money of the plaintiff into the pocket of the defendant. The furthest the court has gone is in O'Conner *v.* Warren, 4 Watts & Serg. 223, where it is held, that until the judiciary has fixed the meaning of a doubtful law, upon which right has become vested, it may be explained by legislative enactment. But in that case it is strongly intimated, if not directly decided, that where the construction is not doubtful, particularly where it has been under judicial cognisance, no subsequent act of the legislature, whether it assumes the form of an explanatory act, or whatever shape it may take, as using the words " it shall not be construed," which is now the usual formula, it cannot affect or change previous rights already fixed and settled. Explanatory acts must be construed as operating on future cases alone, except where they are designed to explain a doubtful statute, in which cases they deserve and always will receive the most respectful attention from the judicial branch of the government. It would be a libel on a co-ordinate branch of the government to suppose, without express words, they intended to commit so great and manifest injustice. In Bedford *v.* Shilling, 4 Serg. & Rawle, 401, which was a case that involved the question whether the

act of the 10th March, 1814, explanatory of the act for the sale of vacant lands, extended to suits commenced before its passage, the Chief Justice remarks, the question will be whether the explanatory act of Assembly extends to suits commenced before its passage. And that it does not, I am clearly of opinion, because nothing less than *positive expressions* would warrant the court in giving a construction which would work manifest injustice. It would be disrespectful to the legislature to impute to them deliberate intention to do wrong, or wantonly to violate the constitution. The words of the 20th section are general, but there are no express words or language which is equivalent to positive expression, which clearly indicates an intention to give a retrospective effect to the act, by including cases already adjudicated. This being so, it is the duty of the court to confine its action to cases which may hereafter arise. But be this as it may, there is nothing wrong in the instruction of the court. The purchaser at the treasury sale, and his vendee, stand on the same platform. Neither are entitled to compensation for improvements on seated tracts, if the defect of title was known to the purchaser at the time of sale. And what will affect the purchaser with knowledge is notice, actual or constructive; that is, such knowledge as will put a prudent man on inquiry. If the purchaser knew, or ought to have known, as from marks on the ground, that it was a seated tract, he acts, according to every principle of law and justice, with bad faith in the attempt to improve the owner out of his title. Whether the improvements are of this description is necessarily a question for the jury; and as they have found that Lambertson knew the defects of title, at the time the improvements were made by him and his vendee, or ought to have known, (if common prudence had been observed,) that it was a seated tract, we see nothing in the case which would justify us in disturbing the judgment.                    Judgment affirmed.