## A. J. HEFNER AND T. P. LOCKHART v. C. T. DOWNING.

### (Case No. 1316.)

1. BOUNDARY LINE — FRAUD — PURCHASER.— Although the owner of land may have been misled by the false representations of the owner of an adjoining tract to mark a division line between them differing from the true line, he will be bound by that line as to a third party who has been induced by his having marked and acquiesced in it to believe it to be the true line, and to purchase and make valuable improvements relying on it.

2. SAME — NEGLIGENCE.— If a party establishes and marks a boundary to his land without the exercise of proper care in determining the true line, his negligence has the same effect as to third parties misled by it as if he had acted knowingly.

3. SAME — NOTICE.— A third party would not be protected who had notice that the line was not recognized by the owner of the contiguous tract.

4. SAME — ACQUIESCENCE — IMPROVEMENTS.— An agreement to establish a boundary may be implied from acquiescence; and the boundary so acquiesced in should be enforced for the protection of the third party who has purchased on the faith of it, and of the original proprietor who, acting in good faith, has been induced thereby to make permanent and valuable improvements.

APPEAL from Hunt.    Tried below before the Hon. W. H. Andrews, special judge.

Action of trespass to try title to fifteen and one-half acres of land, instituted in December, 1877, by Carter S. Downing against A. J. Hefner and T. P. Lockhart.   The pleadings of the defendants consisted of a general demurrer, plea of not guilty, limitation, and improvements in good faith.   The dispute was as to the boundary line between a tract of one hundred and twenty acres out of a survey of one-third of a league of land, bought by Downing of G. W. Wright, and a tract of one hundred and seventy acres out of the same survey, bought by Hefner of Wright.   The deed to Downing, and that to Hefner, were made on the same day, July 16, 1869, but the transactions with Wright leading to those deeds were much earlier.   In neither of the deeds was the line between the tracts described so as to be identified otherwise than by course and distance.   Downing's one hundred and twenty acres was a rectangle, the south boundary of which was three-fourths of a mile in length, and was a part of the same line which prolonged west formed the south boundary of Hefner's one hundred and seventy acre tract, and prolonged east formed the south boundary of another tract out of the same survey, being Hefner's home place, where he had lived as far back as 1860.   On this same south boundary line was the N. W. corner of the Simpson tract, which Downing testified that Hefner had told him was just one-half a mile from the S. W. corner of his, Hefner's, home place, which last corner was

also the S. E. corner of Downing's tract. In 1866, Downing being with a surveyor who was running along this common south boundary line, asked him to let him know when he was one-fourth of a mile west of the aforesaid N. W. corner of the Simpson tract, as that would be his S. W. corner, and on being notified marked the corner, and the compass was set, and the dividing line was run for a short distance. To give Downing the amount of land he was entitled to, the corner should have been one hundred and eighty-five varas further west.

Downing testified that he never regarded the corner thus established as his; that he knew at the time that it depended on the correctness of Hefner's statement; that at various times he repudiated that corner and line to A. J. Hefner, and to those claiming under him, before they had acquired any rights to the disputed land, or made any improvements thereon. A. J. Hefner denied making the statement to Downing testified to by him; that in 1867 he completed the division line which had been partly marked in 1866; that in 1868 he sold forty acres, including the land in dispute, to J. L. Hefner, who paid for it and at once settled on and improved it. J. L. Hefner testified that he bought supposing the marked line to be the boundary; that he paid for the land, made valuable improvements on it, and continued to occupy it until 1873, when he sold to Lockhart, never having heard the line questioned. There was testimony conflicting with that of Downing in regard to his acts and statement repudiating the line, and testimony of various affirmative acts of his recognizing the line. It appears that J. L. Hefner had no deed to the forty acres bought by him, but that A. J. Hefner conveyed directly to Lockhart, the vendee of J. L. Hefner.

The substance of the charge given by the court is stated in the opinion. The defendants asked a charge divided into paragraphs, the third, fifth and sixth of which are as follows:

Third. "The acquiescence of parties of adjoining lands in a particular line is a circumstance to which the jury may look in determining the true boundary."

Fifth. "That when there is a dispute between adjoining proprietors as to the true dividing line between them, that if one of such proprietors builds and erects his improvements with reference to a particular line contended for by him as the true line, and the other proprietor respects and acquiesces in said line, he is bound by such respect and acquiescence in said line; he cannot dispute said line and claim that it is somewhere else, and this, too, though it may not be the correct and proper line."

Sixth. "And if in this case you believe that Hefner and his vendees bought said land and improved it with reference to the line claimed by them, and Downing respected and acquiesced in said line and allowed Hefner and his vendee, Lockhart, to purchase and to place valuable improvements on said land with reference to said line, Downing is bound by such respect and acquiescence, and you will find for defendants."

The trial resulted in a verdict for the plaintiff. The defendants bring the case up by appeal.

*Perkins, Gilbert & Perkins* and *Upthergrove & Hefner,* for appellants.

I. The first assignment of error is as follows: The court erred in subdivision one of general charge, which is as follows: "It is only necessary for the jury to determine which party has the superior right under said common source." This portion of the charge took from the jury the consideration of the issue joined in this cause, which was whether plaintiff and defendant had established a division line between them by agreement or acquiescence. Browning *v.* Atkinson, 46 Tex., 608; Spence *v.* McCowan, 53 Tex., 31; McArthur *v.* Henry, 35 Tex., 815.

II. The court erred in subdivision two of general charge, which is as follows: "When two parties purchased land from the same common source, and at the same time and place, and one of the conveyances sets out the land, giving course and distance and quantity thereof, and the other does not give distance or special quantity, but merely calls for surrounding tracts including the tract conveyed as above stated on the same day, the course and distance given in one survey will control the bounds of the other, provided there are no natural or artificial objects called for in the grants or conveyances, and in such events said natural or artificial objects thus called for will control the division line of said surveys or tracts." This charge makes the rights of the parties depend upon the original conveyances and ignores the issue joined in this cause — namely, was a boundary line established by agreement or acquiescence,— and further ignores the purchase of J. L. Hefner from A. J. Hefner in 1868, and his improvements thereon relative to said land, and the purchase of T. P. Lockhart from J. L. Hefner in 1873, all of whom purchased said land relative to the corner put up by Downing in 1866. . . .

*Matthews & Neyland,* for appellee.

I. When a mere omission in one part of the charge of the court is supplied substantially in another part, it is not sufficient ground

for reversing the judgment, where there is no reason to apprehend that the jury may have been misled.    Robinson *v.* Varnell, 16 Tex., 386, 387; Able *v.* Lee, 6 Tex., 427, 430.

II. The charge of the court should be considered with reference to the issue and the evidence, and it is sufficient if it presents the law on the points put in issue by the pleading and supported by any testimony.    The charges given prior to the fifth charge severed all the issues which had been supported by testimony of any character which pertained to the title of said land, and the law relative to the plea of improvements in good faith was correctly given in the succeeding charge.    The plea of limitation had not been supported by any testimony.    There had been no plea of estoppel presented by defendant's answer.    Grumbles *v.* Grumbles, 17 Tex., 472; Powell *v.* Messer, 18 Tex., 405; Michael *v.* Zimmerman, 4 Tex., 78.

III. Where there is no evidence before the jury requiring a charge which has been given by the court, there can be no objection to the verdict of the jury because there is no response to or finding under said charge.    There is no evidence apparent in the record that tends to show that the improvements on said land were placed there in good faith.    The improvements are shown to have been placed on said land by J. L. Hefner in 1867 and 1868, when he held no title, and knew that he held none, and could not hold said improvements and recover their value in a controversy with G. W. Wright, the then owner of the land; and when Downing purchased of Wright in July, 1869, he received all the title held by him, subject only to such equities as could be maintained against him.    Wright *v.* Wright, 6 Tex., 3; Loyd *v.* Brink, 35 Tex., 1

STAYTON, ASSOCIATE JUSTICE.— The question in issue in this cause was not as to the true boundary line as it would be fixed by an actual survey of the land of the appellee by its field notes, but whether a marked line between them had been so recognized and acted upon for a long time as to preclude Downing, as against Lockhart, who had purchased land relying upon the marked line as the true line, from disputing that fact.

There was evidence tending to show that Downing, and those persons from whom Lockhart bought, had recognized the marked line as the true line between their lands since 1867, and that upon such recognition, improvements had been made upon the land now in controversy, which upon an actual survey would be upon the land of Downing.

There was also a conflict of evidence as to whether Downing had

been induced to make and recognize the marked line as the true line, by a misrepresentation made by A. J. Hefner.

If the marked line was made and recognized by Downing in consequence of a misrepresentation made by A. J. Hefner, whether the same was willfully made or not, Downing ought not to be bound thereby in a contest between them; but the contest is now between Downing and Lockhart, who bought from J. L. Hefner, who bought from A. J. Hefner.

The court in effect charged the jury, that, if Downing made and recognized the marked line through the false representation of A. J. Hefner, made either in fraud or through mistake, that then he was not bound thereby, and refused to give charges to the effect that, if Downing respected and acquiesced in the marked line, and allowed the vendees of Hefner to purchase and place valuable improvements on the land in controversy, upon the belief that the line which he had marked and acquiesced in was the true line, then he was bound thereby. Such a charge would have presented the true issue between the parties, and ought to have been given.

That an express parol agreement made by the owners of contiguous lands, as to their boundary line, will be recognized as binding between such persons, has been held by this court. Houston v. Sneed, 15 Tex., 310; George v. Thomas, 16 Tex., 89.

Such an agreement may be implied from the acts and long acquiescence of parties in regard to a boundary line, which should be enforced when a failure to enforce it would result in injury to subsequent purchasers, who have bought relying upon acts open to their observation, and indicating the true boundary as recognized by those from whom they purchase and contiguous owners; and as between original owners who have acquiesced in a common boundary, whereby one of them has been induced to make permanent and valuable improvements, which he would not otherwise have made on land afterwards in controversy, the same should be enforced. McCormick v. Barnum, 10 Wend., 111; Willis v. Swartz, 28 Pa. St., 417; Robinson v. Justice, 2 Pa., 22; Carr v. Wallace, 7 Watts, 400; McKelsey v. Truly, 4 W. & S., 324; Storrs v. Baker, 6 Johns. Ch., 167; Wendell v. Van Rensselaer, 1 Johns. Ch., 354; 44 Tex., 269; 45 Tex., 475; 28 Tex., 730; 29 Tex., 72.

We are not called upon under the facts of this case to determine whether a mere acquiescence in a boundary line, when parties have not been induced thereby to change their situation for a period short of the longest period of limitation, would be sufficient to raise the presumption of such an agreement.

The testimony tends to show that the marked line, or at least a portion of it from which the residue was made by protracting that already made, was made by Downing, and that he recognized the same fully; that he cut timber in accordance with it; and that he saw the improvements made upon the land in controversy while they were being made, and offered no objection thereto.

If this be true, it is not a case in which a party has been simply silent when he ought to have spoken, but a case in which by his own act he may have misled others to their injury. If it be said that he did this in ignorance of the true boundary of his land, it may be replied, if the evidence be true, that he established the marked line without the exercise of such care in determining the true line as any land owner ought to use in making lines upon which others may rely.

He that misleads another to his injury by his negligence ought to be held to the same degree of responsibility as though he had knowingly done so.

On the other hand, the testimony of the appellee tends to show that while he respected the marked line in so far as not to cut timber beyond it, that he informed both J. L. Hefner and Lockhart, when they each purchased, and when they each made improvements on the land in controversy, that his true line would embrace it, and that he said nothing to induce the belief that he would abandon his claim.

If this be true, such persons acted in their own wrong in purchasing and making improvements on the land, without having the true line first established, and they would not be entitled to protection simply because the appellee may have marked a line which was not the true one, and took no steps at law to prevent their trespass upon his land.

Any notice to those purchasing and improving the land in controversy, before or at the time they purchased, that Downing did not recognize the marked line as the true line, made it their duty to ascertain where the true line was before purchasing and improving.

The charges asked by the appellants may not have been strictly correct, yet their character was such as to indicate to the court the real issue to be submitted to the jury, and the failure to give such a charge as would present the issue, together with the fact that the charge given was not a correct charge considered with reference to the facts in evidence, requires a reversal of the judgment.

Judgment reversed and cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 17, 1882.]