## Bartholemew *against* Leech.

An agent having the charge of unseated lands cannot become a purchaser thereof at a sale for taxes, without a previous explicit renunciation of the agency.

A surplus bond given by the purchaser of unseated land sold for taxes must contain a specification of the land sold; otherwise it is vicious, and therefore the title in the purchaser is defective.

ERROR to the common pleas of *Mercer* county.

Edward Bartholemew against Joseph Leech.   Ejectment for the one-seventh part of five hundred acres of land.

The plaintiff gave in evidence a regular legal title to the land in dispute.   The defendant gave in evidence an assessment of taxes upon the whole tract for the year 1831 of 10 dollars 25 cents, and a sale of it by the treasurer to John Leech for 473 dollars, a deed from the treasurer to John Leech, and from him to his son Joseph Leech the defendant.   The bond given by John Leech to the treasurer for the surplus purchase money was in the following form :

"Know all men by these presents, that I, John Leech, of Mercer county and commonwealth of Pennsylvania, am held and firmly bound unto D. T. Porter, treasurer of Mercer county in the commonwealth aforesaid, in the sum of 899 dollars 76 cents, the same to be paid to the said D. T. Porter, his certain attorney, executors, administrators or assigns.   To which payment well and truly to be made, I do bind myself, my heirs, *executors and administrators* firmly by these presents, sealed with my seal, dated the 11th day of June in the year of our Lord 1832.   The condition of this obligation is such, that if the above bounden John Leech, his heirs, executors, administrators or any of them, do well and truly pay or cause to be paid unto the above named D. T. Porter, his certain attorney, executors, administrators or assigns, the just and full sum of 449 dollars 88 cents, when thereunto required by the owner or owners at the time of sale made by the said treasurer of Mercer county, his, her or their heirs, assigns or legal representatives, without any fraud or further delay than that which the law provides in such cases, then the above obligation to be void, or else to be and remain in full force and virtue.   And I the aforesaid John Leech do hereby authorize and empower J. J. Pearson, Esq., or any other attorney of any court of record in the commonwealth of Pennsylvania or elsewhere, to appear for me in any such court in any suit or action brought or to be brought on the above obligation, and after one or more declarations filed for the above penalty, thereupon to appear for me and confess judgment

[Bartholemew v. Leech.]

or judgments to the plaintiff or plaintiffs in such suit or action, as of any term, with costs of suit and release of errors.

"JOHN LEECH, [L. S.]"

Indorsement, "John Leech, for the purchase of lot No. 92, in the fifth district, of five hundred acres."

The plaintiff then proved that John Leech had been an agent of captain Bartholemew, the father of the plaintiff, in taking care of the land and paying the taxes, and gave in evidence his account against the estate for taxes paid by him for the land from 1813 to 1828 amounting to 128 dollars including commissions, credit for 94 dollars, and a receipt for the balance 34 dollars dated the 15th of January 1829, signed "John Leech, agent." John Leech was then called as a witness, and said "that the account was in his hand writing and that he gave it to John Bartholemew; that when the land was advertized for sale, he wrote to John, and inclosed the letter to a member of the legislature from his county, informing him that it was sold, that he had no funds in his hands, and did not buy it in trust for them but for himself; that he had had a conversation with Mr Holstein, who said he would attend to it, that they were acquaintances of his." The defendant was acquainted with his father's agency. The defendant had cleared forty acres of the land, built a large barn and saw mill.

The plaintiff requested the court to charge the jury that the relation of principal and agent which had subsisted between the plaintiff's father and John Leech had not been so explicitly renounced as to enable him to become a purchaser, and that if it had, the surplus bond was so defective in not describing the land sold as to vitiate the sale.

The court below charged the jury against the plaintiff on both these points and directed the jury to find for the defendant. Verdict accordingly.

*Holstein* and *Forward*, for plaintiff in error, cited, 6 *Watts* 451; 10 *Serg. & Rawle* 239; *Purd. Dig.* 862; 6 *Watts* 64; 5 *Watts* 247; 13 *Serg. & Rawle* 193; 14 *Serg. & Rawle* 380; 2 *Penn. Rep.* 496.

*Pearson*, for defendant in error, cited, 2 *Yeates* 88; 4 *Watts* 138; 1 *Watts* 42; 3 *Binn.* 54; 14 *Serg. & Rawle* 333; 1 *Peters's C. C.* 356; 11 *Serg. & Rawle* 134; 2 *Penn. Rep.* 501; 7 *Serg. & Rawle* 306; 14 *Serg. & Rawle* 352.

The opinion of the Court was delivered by

GIBSON, C. J.—It is not denied that the defendant's father had been the plaintiff's agent and curator of the land. The father himself testified that his agency had expired before the sale; but that is not enough. To capacitate him as a purchaser on his own account

he must have explicitly resigned his trust.   The most open, inge-
nuous and disinterested dealing is required of a confidential agent
while he consents to act as such ; and there must be an unambi-
guous relinquishment of his agency before he can acquire a personal
interest in the subject of it.   To leave a doubt of his position in this
respect is to turn himself into a trustee.   It is unnecessary to recur
to authority for a principle so familiar or so accordant with common
honesty.   The agent was employed in this instance expressly to
preserve the land from being sold ; and taking his agency to have
been left unclosed by the absence of an explicit renunciation of it,
neither Leisenring v. Black, 5 *Watts* 303, nor Riddle v. Murphy, 7
*Serg. & Rawle* 230, presented a stronger case to restrain the agent
from purchasing for himself.   Within the three preceding years he
had been reimbursed his expenses and paid for his services; but that
was not a dissolution of the previous relation ; and it is not pre-
tended that there was any other evidence of it.   On the contrary,
the fact that he gave intelligence of the sale to a co-tenant of the
plaintiff, as well as to a friend of the family, evinces a consciousness
that his duties as a fiduciary were not entirely closed.   He is there-
fore to be treated as having been a trustee.   But did the defendant
purchase of him with notice ?   Knowing, as he probably did, of the
former existence of the agency, he would be bound to inquire into
the duration of it ; and he would stand affected by it.

   There is, however, an objection to the treasurer's sale which goes
to the root of it.   The surplus bond contains no specification of the
land ; and being referable to nothing in particular, it could neither
create a lien nor give notice of one.   As any thing but a common
bond for the payment of money it was insensible and incurably
vicious.   Nor is it helped by the treasurer's subsequent indorsement
of the district and number of the tract.   That was an indorsement
for the officer's convenience, but no part of the instrument.   In an
action on it to reach the land the terre-tenant might urge, with irre-
sistible force, that the purchaser had not given the treasurer power
to pledge it ; and in looking into the bond, which alone is the pur-
chaser's act, it would not be discovered that the purchaser had
pledged it himself.   The indorsement was a memorandum for the
convenience of filing, which might have been made with equal pro-
priety by the prothonotary's clerk.   To whom, then, is the mispri-
sion to be charged ?   In White v. Willard, 1 *Watts* 42, and Fager
v. Campbell, 5 *Watts* 247, the title was not prejudiced by the trea-
surer's omission to have the bond put on file ; but it had been held
otherwise where the purchaser had given no bond at all : and the
instrument in the present case is certainly not the bond directed by
the statute.   But it is insisted that, as the purchaser does not furnish
the instrument, his title is not to be avoided by a blunder in the pre-
paration of it.   The treasurer is certainly charged with the business
of preparation ; but he is bound to perform it under the direction of
the purchaser, who is bound, on the other hand, to know the law of

[Bartholemew v. Leech.]

his title and to point out errors in the concoction of it. When the bond is delivered, his participation ends, and the exclusive business of the treasurer begins. That the purchaser previously acts at the peril of his title is shown by Connelly *v.* Nedrow, 6 *Watts* 451, where a deposit of the surplus money was not allowed to be an equivalent for the statutory security. The defect is fatal, and the plaintiff is entitled to recover.

Judgment reversed, and a *venire de novo* awarded.