# Breisch *et al. versus* Coxe *et al.*

1. Coxe, the owner of a number of tracts of unseated land, went to the treasurer to pay the taxes and received from him a tabulated statement of county, state and road taxes on the several tracts ; he paid the whole amount and the treasurer gave him a receipt dated April 30th 1852, "in full of all the taxes * * * upon the several tracts * * * above mentioned, the property of said Coxe." Against one tract in the statement state and county tax was entered, but no road tax.  Road tax for this tract had been returned to the commissioners by the supervisors January 8th 1852 ; it was sold for this tax June 14th 1852.  *Held*, that the purchaser took no title.

2. A sale of unseated land is void if there were an actual pre-payment of taxes.

3. The Act of March 13th 1815, sect. 4, which forbids recovery by the owner, except in case of payment of taxes before sale, or redemption within two years, does not exclude recovery where the title is defective for other causes.

4. The payment of tax is a duty, a failure of which is the fault of the owner, but he is not responsible for the steps leading to it.

5. The owner must apply to the treasurer for the taxes assessed against his land, and he has performed his duty, although the officer fail to give him correct information.

6. It is not the owner's duty to search the tax books ; the treasurer cannot lay them before him and compel him to search for himself.

7. If the owner pays all the taxes stated by the treasurer, he has done his whole duty.

8. A bonâ fide attempt to pay all the taxes, frustrated by the fault of the treasurer, stands as the equivalent of actual payment.

9. The road tax in this case having been returned by the supervisors to the treasurer before the statement was made, the omission from the statement of taxes was his fault.

10. The statement and receipt in this case, their correctness not being assailed, were clear evidence that Coxe asked the treasurer for the taxes assessed and due by him and paid all that was demanded.

11. The owner is not bound to take notice of a sale of unseated land where the treasurer has no authority to make the sale ; the sale being void for want of jurisdiction.

12. Where the treasurer has authority to do the act and he errs in the proceeding in which he exercises his authority, the owner must take notice.

13. The limitation in the Act of April 3d 1804 does not apply to a case where the treasurer has no authority to make the sale because no tax appears to have been and was assessed, and the tax has not been due for a year and has been unpaid ; nor when a bonâ fide offer to pay has been frustrated by the negligence of the treasurer to give information of the taxes.

March 9th 1876.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

[Breisch v. Coxe.]

Error to the Court of Common Pleas of *Schuylkill county :* Of January Term 1876, No. 49.

This was an action of ejectment for a tract of land in North Union township, containing 400 acres and allowance surveyed on a warrant to Matthew Smith granted June 13th 1793, adjoining John Dunlap, Robert Robe, John Davidson, Thomas Rees and George Langs. The writ was issued June 9th 1870 at the suit of Charles S. Coxe, Franklin Coxe and Tench C. Coxe, against Jacob Breisch, William Michael, Stephen Michael, Benjamin Bitter, Henry Lebo and Cornelius Wagner.

On the 21st of October 1875, Charlemagne Tower was added as plaintiff as the alienee of an interest in the land in dispute.

The case was tried on the same day before Pershing, P. J.

The plaintiffs gave in evidence the warrant and survey October 12th 1793, bounded and containing as above stated. This title became vested in Tench Coxe about March 1st 1794. On the 20th of March 1801, Tench Coxe made an assignment for the benefit of his creditors to Peter S. Duponceau and others ; the other assignees conveyed to Peter S. Duponceau ; he conveyed to Charles S. Coxe upon the same trust. Tench Coxe died having made a will which was proved July 17th 1822 ; he appointed Charles S. Coxe and others the executors with power to sell and convey his land. On the 30th of May 1830 a patent for the land in dispute was issued to Charles S. Coxe " in trust for the assignees of Tench Coxe, deceased."

This land was sold for taxes of 1820, and conveyed by the county treasurer to John Schall on the 30th of July 1822 ; Schall assigned to Charles S. Coxe on the 11th of August 1829 ; Coxe then held for the same trust as he had previously to the sale.

By various devises and other conveyances of persons claiming under Tench Coxe, deceased, his title, as well as that under the tax sale, passed to the plaintiffs in this case.

The plaintiffs gave evidence of assessments, which did not appear to include road tax, on this tract as unseated in the name of Smith from 1821 to 1830 inclusive ; and from 1831 to 1870 inclusive in the name of " Charles S. Coxe, grantee in trust for the estate of Tench Coxe, deceased," and of the payment of the taxes.

Defendants gave in evidence assessments in Union township, viz. :—

1850.—Matthias Smith, 400 acres, valuation $200,—80 cents and 60 cents.

1851.—Same.

Also : " Extract books."

400 acres, Matthias Smith. County tax of 1850, 80 cents. State tax, 60. Road tax, $1.20.

31 P. F. SMITH—22

[Breisch *v.* Coxe.]

1851.—County tax, 80 cents. State 60; total $4.00; sold for $5.50.

Also: Treasurer's sale book for 1852.

Matthias Smith to Joseph S. Patterson, sold for $7.63.

. Sale held in Pottsville, June 14th 1852.

Treasurer's deed, dated .11th September 1852; assignment on deed, dated February 3d 1855, from Patterson to Franklin Stewart.

Patterson's title became vested in Jacob Breisch and William Michael, October 12th 1869.

There was evidence that the tract assessed as "Matthias Smith" was the same as that assessed "Matthew Smith."

Also: Return of road tax for 1850, made by the supervisors of Union township.

Matthias Smith 400 acres; valuation $200. Road tax $1.20. Returned and filed in the commissioners' office, January 8th 1852; copy returned into the treasurer's office, January 2d 1852.

The supervisors of Union township testified that no road tax had been paid to them on the Matthias or Matthew Smith tract.

The plaintiffs in rebuttal gave in evidence,

" An account of all taxes assessed and unpaid on the land mentioned below, situate in Union and Rush townships, in Schuylkill county, the property of Charles S. Coxe, Esq., trustee of the estate of Tench Coxe, Esq., deceased."

This paper was for the taxes of 25 tracts; it was arranged in columns headed respectively, " County," " State," " Road," " School," for each of the years 1850 and 1851.

One of the tracts contained in the paper was the Matthew Smith tract, opposite to it in each year in the county tax column was " 80," and in the state " 60." There was nothing in either the road or school column; the total carried out against this tract was $2.80.

Against some of the tracts was charged road tax in each year, and against some .there was no such charge. The whole taxes footed up $230.17, including costs of advertising.

At the end of the statement was a receipt as follows :—

" Received April 30th 1852, of Charles S. Coxe, Esq., trustee of the estate of Tench ·Coxe, Esq., deceased, two hundred and thirty dollars and seventeen cents, in full for the taxes, interests, and costs upon the several tracts, part of tracts, and parcels of unseated land above mentioned, the property of the said Charles S. Coxe, Esq., trustee of the estate of Tench Cox, Esq., deceased, and that sum being all the taxes assessed and now due on the said unseated land with the interests and costs thereon.

G. D. BOYER,<br>Treasurer of Schuylkill county."

Also: "An account of all taxes assessed and unpaid on the lands mentioned below, situate in Union, Rush and Mahanoy townships, Schuylkill county, the property of Charles S. Coxe, Esq., trustee of the estate of Tench Coxe, Esq., deceased."

This paper was for taxes on twenty-six tracts. For each of the years 1850 and 1851, there was one column only which was headed "Road." For the years 1852 and 1853, the columns were arranged as in the former paper—a number of the tracts were charged with road tax in some of the four years, and not in others.

The Matthew Smith tract had no charge of road tax for 1850, but was charged with road tax for 1851, and county, state and road tax for the other two years. The aggregate of taxes carried out against this tract was $10.80. The total of charges for taxes, interest on state tax and advertising, as footed up on this paper, was $659.25.

To this statement was a receipt, as follows:—

"Received 3d June 1854, of Charles S. Coxe, Esq., trustee of the estate of Tench Coxe, Esq., deceased, the sum of six hundred and fifty-nine dollars and twenty-five cents, in full for all the taxes upon the several tracts, parts of tracts, and parcels of unseated land above mentioned, the property of the said Charles S. Coxe, trustee, as aforesaid, that sum being all the taxes assessed and now due on the said land with the interests and costs thereon.

ISAAC WARD, Treasurer."

Both receipts were duly acknowledged, but neither had been recorded, under the Act of March 9th 1847, § 1, Pamph. L. 279, 1 Br. Purd. 470, pl. 63.

The defendants' points were:—

1. The tax sale of 1852 to Joseph S. Patterson is based on a regular assessment and sale of the land in suit. It appears, by the evidence of the defendant and that of the supervisors for Union township for 1850, that the road taxes for that year were unpaid, and that Charles S. Coxe, having applied to the treasurer on the 30th of April 1852, and having paid the county and state taxes for 1850 and 1851, on land assessed to Charles S. Coxe, but not the road taxes, for the year 1850, he cannot take advantage of any allegation that he was misled by the county treasurer in this suit, the same having been brought more than five years after the delivery of the treasurer's deed to Patterson.

2. Under all the evidence in this cause, the verdict of the jury must be for the defendant.

3. Coxe paid but the state and county taxes, when in fact there were county, state and road taxes due. The records in the treasurer's office were notice to Coxe, and he was not only presumed to know, but did, in fact, have notice from the records that the road taxes were due, and from his own receipt that they were unpaid.

Hence, if the jury believe that Coxe was not misled by the county treasurer, of which there is no positive evidence in this case, and neglected to pay the road tax, the defendant is entitled to a verdict. And this is so from the fact that the county treasurer has no right to take less than the taxes due; and in such case it would be a fraud upon the county, and the receipt would not avail Coxe, who was a party to it, and which on its face showed that he had not paid the road taxes.

The court charged :—

* * * " It appears that by some conveyances the title of this land was vested in Tench Coxe, and that a patent issued to Charles S. Coxe, in trust for the assignees of Tench Coxe, for the land in dispute. This was followed with an assessment of taxes for the years 1820 and 1821, and a treasurer's sale to John Schall, in 1822. That was followed in 1829 by a transfer of Schall's title to Charles S. Coxe, thus putting the title to this land, as I understand it to be conceded, in the same parties who held it prior to the tax sale. Then the plaintiffs produce assessments establishing payment of taxes from 1821 to 1870 inclusive—a period of almost fifty years. From 1831 to 1870, a period of nearly forty years, the land was assessed in the name of Charles S. Coxe, in trust for the heirs of Tench Coxe, deceased. This would show a title on the part of the plaintiffs, which would give them the right to recover, unless the defendants have shown a better title.

" The title on the part of the defendants is a tax title. It appears that in 1850 and 1851, this Matthew Smith tract was assessed for certain taxes, and that it was sold at treasurer's sale to Joseph S. Patterson, and that his title was transferred to Franklin Stewart, and by him to Jacob Breisch. Mr. Breisch claims under this tax sale * * * It is alleged that as this is a junior tax sale, he has a right to retain the land under this tax title ; and this raises the question in controversy here.

" On the part of the plaintiffs, this tax title of Mr. Breisch is met by receipt of the treasurer of the county, in which it is shown that there is a full payment of all the taxes assessed on the land of Charles S. Coxe, as the trustee of the Tench Coxe estate ; and they claim that holding these receipts of the officer of the county for full payment of all the taxes, the sale of the land was invalid, and would vest no title in the purchasers. The first receipt is dated in 1852, April 30th. This is followed by a receipt from the county treasurer, in 1854, within the period allowed for the redemption of land sold for taxes, for six hundred and some dollars, which is also said to be ' all the taxes assessed and now due on the said land, with the interest and costs thereon'—showing that Charles S. Coxe went to the office of the county, and, as it would appear from the evidence, was furnished by the treasurer of the county himself, all the taxes with the costs that were assessed upon

[Breisch v. Coxe.]

the tract of land which he claimed to own. And it is held by the plaintiffs here that this is an effectual answer to the title set up by the defendant under the treasurer's sale.

"There are other questions involved in this case, but we do not feel disposed to take up the time by discussing them. We have listened to the very able arguments of counsel in the case, with an anxious desire to arrive at what was the law which should govern us in giving instructions to you. [We are firmly impressed with the belief that these receipts are sufficient to sustain the position taken by the plaintiffs here; that the limitation of five years, found in the Act of 1804, would not apply to the facts of this case.] [We therefore instruct you that, under the evidence in this case, your verdict should be for the plaintiffs."]

The verdict was for the plaintiffs.

The defendants took a writ of error; they assigned for error,

1, 2. The parts of the charge in brackets.

3, 4, 5. declining to affirm defendants' points.

*F. P. Dewees* and *F. W. Hughes* (with whom were *J. J. Clark, O. P. Bechtel* and *G. E. Farquhar*), for plaintiffs in error.—To authorize the sale of land for taxes, it must be unseated when assessed in fact; the tax must have been due for a year and unpaid: Laird *v.* Hiester, 12 Harris 453; McReynolds *v.* Longenberger, 7 P. F. Smith 13. The fact that the transcript for the road tax of 1850 was delivered to the treasurer only on the 20th day of January 1852, and the sale in June 1852 was but an irregularity and was protected by the Act of 13th March 1815, sect. 4; 4 Sm. Laws 301, 2 Br. Purd. 1447, pl. 30. Land becomes debtor for the tax by being returned assessed and valued, and the rate per cent. fixed: McDermott *v.* Hoffman, 20 P. F. Smith 54. The presumption is, that township officers levied their rate per cent., and returned it when required by law: Heft *v.* Gephart, 15 P. F. Smith 510; McReynolds *v.* Longenberger, 25 Id. 24. It was a fact known to the supervisors of Union township that the assessment of "Charles S. Coxe, trustee, &c., warrantee, Matthias Smith," and the assessment of "Matthew Smith" applied to the same land. Their return was entirely correct. To whom unseated land is assessed is a matter of no moment, provided it is in a name identified with the land or the title: Strauch *v.* Shoemaker, 1 W. & S. 176; Harper *v.* McKeehan, 3 Id. 238; Russell *v.* Werntz, 12 Harris 338; Philadelphia *v.* Miller, 13 Wright 440; Glass *v.* Gilbert, 8 P. F. Smith 266; Murray *v.* Guilford, 8 Watts 550; Dougherty *v.* Dickey, 4 W. & S. 446; Hunter *v.* Cochran, 3 Barr 105; Montgomery *v.* Meredith, 5 Harris 42; Levick *v.* Brotherline, 24 P. F. Smith 149. Land is liable for the payment of several taxes levied once, and only once: Gilmore *v.* Thompson, 3 Watts 109. The treasurer has no power to exonerate the owner of land from the pay-

ment of taxes; he is merely an executive officer; all discretionary powers relating to such moneys and unpaid taxes are vested in the county commissioners: Steiner *v.* Coxe, 4 Barr 13; Philadelphia *v.* Miller, 13 Wright 440; Brown *v.* Commonwealth, 2 Rawle 44.

The treasurer, in offering the Matthias Smith tract for sale in June 1852, asserted to thé public that not only the road but that also the state and county taxes were unpaid for the years 1850 and 1851: Laird *v.* Hiester, 12 Harris 464; Burd *v.* Patterson, 10 Id. 223. It is not essential to the validity of a sale of unseated lands for taxes, that it should be sold two years after the tax was assessed; they may be sold at any subsequent sale: Paden *v.* Akin, 7 W. & S. 456:

The question of the payment of redemption money is a very different one. There the treasurer is presumed to know the exact amount required to redeem, and if such redemption is made at the proper time, it is valid, though, by mistake of the county treasurer, the owner did not pay all the taxes that were against the land: Bubb *v.* Tompkins, 11 Wright 359; Dietrick *v.* Mason, 7 P. F. Smith 40; Liggett *v.* Long, 7 Harris 499; Irwin *v.* Trego, 10 Id. 368; Huzzard *v.* Trego, 11 Casey 11; Rogers *v.* Johnson, 17 P. F. Smith 49. In case of a mistake as to the amount paid, it must appear that the fault was exclusively that of the treasurer: Lamb *v.* Irwin, 19 P. F. Smith 436; Bubb *v.* Tompkins, 11 Wright 359. The duty of the owner is to see that the taxes unreturned were paid: Baird *v.* Cahoon, 5 W. & S. 540; Burd *v.* Patterson, 10 Harris 219.

By the 4th sect. of the Act of 13th March 1815, *supra*, if the owner of land sold shall make within two years after such sale an offer of the amount of taxes for which the lands were sold, and the costs, together with an additional sum of 25 per cent. on the same, to the county treasurer, "and if it shall be refused by the treasurer, or in case the owner of land so sold shall have paid the taxes due on them previously to the sale, then, and in either of these cases, said owner shall be entitled to recover the same by due course of law, but in no other case and on no other plea shall an action be sustained." By the Act of April 3d 1804, sect. 3, 4 Sm. Laws 202, 2 Br. Purd. 1448, pl. 31, " no action for the recovery of said lands shall lie, unless the same be brought within five years after the sale thereof, for taxes, as aforesaid." These acts are in *pari materiâ*, and limit the right of action by the owners of unseated lands against a purchaser, to five years: Ash *v.* Ashton, 3 W. & S. 510. The Act of 1815 repealed only so much of the Act of 1804 as it altered or supplied; the limitation, therefore, of five years, in the Act of 1804, is in full force: McCall *v.* Himebaugh, 4 W. & S. 164; Sheik *v.* McElroy, 8 Harris 25; Robb *v.* Bowen, 9 Barr 71; Burd *v.* Patterson, 10 Harris 219;

[Breisch v. Coxe.]

Iddings v. Cairns, 2 Grant 88; Rogers v. Johnson, 17 P. F. Smith 43; Johnston v. Jackson, 20 Id. 168.   Since the Act of March 29th 1824, 8 Sm. Laws 291, 2 Br. Purd. 1448, pl. 34, the limitation under the Act of 1804 commences ·from the sale and the delivery of the deed : Ash v. Ashton, 3 W. & S. 510; Bradford v. Dornseif, 2 Penna. R. 503 ;—Robb v. Bowen, 9 Barr 71, and the other cases above cited with it.   The limitation is in full force, even when the conditions of sale upon which the purchaser at tax sale relies, have not been complied with : same cases.   The only method in which the owner can avoid bringing his action of ejectment within five years, is by taking actual possession of the land ; there the owner of the tax title must show the requisites under· the provisions of the Act of 1815 : Cranmer v. Hall, 4 W. & S. 36 ; Hole v. Rittenhouse, 7 Harris 305 ; Rogers v. Johnson, 17 P. F. Smith 43 ; McReynolds v. Longenberger, 7 Id. 29 ; Bigler v. Karns, 4· W. & S. 137 ; Sherman v. Woodburn, 10 Barr 511. The presumption of payment arising from the duty of the owner to pay his taxes is overthrown by the counter presumption that the officers of the county have not violated their duty by selling the land after the taxes are paid : Ankeny v. Albright, 8 Harris 157.   The defendants' title cannot be swept away by an unauthorized and unwarranted receipt by the treasurer, false, as a matter of fact, unrecorded, and filed away for over twenty-three years among the private papers'. of the plaintiff.   The record is the muniment of title upon which purchasers depend, and they are not bound to look beyond it to discover latent frauds, of which they have no notice, and to which there is nothing to direct their attention : Hoffman v. Strohecker, 7 Watts 86 ; Price v. Junkin, 4 Id. 85 ; Fetterman v. Murphy, Id. 424 ; Cadbury v. Duval, 10 Barr 272 ; Mode's Appeal, 6 W. & S. 280.

The court should have instructed the jury to render a verdict for the defendants: 1. Because the treasurer's sale, upon which the defendant relied, was of unseated land, properly assessed for taxes, due one whole year and unpaid. 2. Because the purchaser fulfilled all the conditions. 3. Because the purchaser was not bound by any unauthorized declarations to Coxe, false in point of fact, of which he has no·notice, and especially was he not bound in the face of a contrary declaration of the treasurer, truthfully made in the course of his official duty. 4. Because Coxe was put upon inquiry as to the payment of taxes by reason of the treasurer's sale of the Matthias Smith tract to Patterson, which involved the assertion that the taxes were unpaid, and was, therefore, bound to inquire into the truth of the fact asserted in his receipt, that all taxes against the land were included therein. 5. Because Coxe neglected to redeem from the treasurer's sale of 1852. 6. Because Coxe allowed eighteen years to elapse without bringing his action of ejectment, whereby innocent parties, relying upon the law rela-

[Breisch *v.* Coxe.]

tive to tax sale, and the verity of the public record, have become involved.

*G. R. Kaercher* and *F. B. Gowen,* for defendants in error.— The sale to Patterson on the 14th June 1852, was void because the road tax had not been returned one whole year previous to the sale.

By the Act of 30th March 1811, § 1, 5 Sm. Laws 251, 2 Br. Purd. 1289, sect. 55 : " No land shall be sold for road taxes until twelve months after the transcripts have been delivered to the treasurers, &c. In this case six months had not elapsed. This being a requisite, without which there was no authority to sell, the sale was void and no title passed to Patterson. The absence of the requisites of a valid sale involved exemption from the penalties of the Acts of 1804 and 1815 : Laird *v.* Hiester, 12 Harris 463 ; McReynolds *v.* Longenberger, 25 P. F. Smith 13.

Judge Coxe did all that was required from him when he paid all the taxes demanded of him in the accounts furnished by the treasurer, and sale on another and double assessment of the same land was void. The error of the officer will not deprive the owner of his land : Baird *v.* Cahoon, 5 W. & S. 541 ; Dougherty *v.* Dickey, 4 Id. 446 ; Laird *v.* Hiester, 12 Harris 464.

The unseated land laws are intended to enforce the payment of taxes, and their purpose is fulfilled when the duty is performed. If it be sold after that, it is through the error of some officer, which cannot be visited on the owner. The sale involves an assertion by the treasurer that the taxes are unpaid, and the purchaser relies upon this or on his own investigations, and his title depends upon its truth : Halsey *v.* Blood, 5 Casey 319 ; Bubb *v.* Tompkins, 11 Wright 359 ; Price *v.* Mott, 2 P. F. Smith 316 ; Philadelphia *v.* Lyman, 6 Id. 504 ; Dietrick *v.* Mason, 7 Id. 43.

The curative provisions of the Act of 1815 and the limitation of the Act of 1804, protect the tax title against irregularities, after the lapse of five years, not against the absence of the requisites of a valid sale.

The requisites of a valid sale must be present, or the sale is void and no title passes : Laird *v.* Hiester, 12 Harris 463. That the land was unseated at the time of the assessment; that a tax appears to have been, and was in fact, assessed upon it by the proper officer, for one whole year, and remains unpaid, are requisite to a valid sale ; their absence involves exemption from the penalties of the Acts of 1804 and 1815 : Hunter *v.* Cochran, 3 Barr 107 ; McReynolds *v.* Longenberger, 25 P. F. Smith 13; Ankeny *v.* Albright, 8 Harris 157 ; Levick *v.* Brotherline, 24 P. F. Smith 149 ; Wilmoth *v.* Canfield, 26 Id. 153 ; Rogers *v.* Johnson, 17 Id. 49. It matters not by whom the taxes were paid. It is enough

[Breisch v. Coxe.]

that they were paid by somebody: Strauch v. Shoemaker, 1 W. & S. 176; Montgomery v. Meredith, 5 Harris 47. Being paid, the power of the treasurer in relation to the sale of unseated land was exhausted. The lien of the unpaid taxes being divested, a subsequent sale is invalid, as well against the owner as the person who holds the prior tax title; Dougherty v. Dickey, 4 W. & S. 146. An Act of 1804 does not apply: Irwin v. Trego, 10 Harris 371.

Chief Justice AGNEW delivered the opinion of the court, May 8th 1876.

The first and important question in this case is, whether an offer to the county treasurer, of payment of all the taxes due upon unseated lands, and a payment by the owner, of all sums made known to him by the treasurer, is equivalent to an actual payment of the whole, and will prevent a valid sale of the land for an unpaid balance not made known by the treasurer? It is undisputed that the sale is void if there be actual pre-payment of the tax. The 4th section of the Act of 13th March 1815, 6 Sm. Laws 301, is expressly on this point, and the right is recognised in many cases: Dougherty v. Dickey, 4 W. & S. 446; Hubley v. Keyser, 2 Penna. 496; Baird v. Cahoon, 4 W. & S. 540; Kennedy v. Daily, 6 Watts 269; Ankeny v. Albright, 8 Harris 157; Laird v. Hiester, 12 Harris 463.

But it is contended that a tender of payment is not within the express words of the 4th section of the act, which forbids recovery except in the case of redemption within two years, or a payment of the taxes before the sale. It is said, that being not paid in fact, the owner is bound to know it; the jurisdiction of the treasurer remains, and the purchaser will not be affected by an act or neglect of the treasurer not appearing in the proper books. The Act of 1815 is, indeed, very express, that the owner shall recover after a sale for taxes, "in no other case, and on no other plea," than the two mentioned. Yet it has been held that these words were not intended to exclude recovery, where the tax title is obviously defective, for other good causes. Thus, in the cases of Sutton v. Nelson, 10 S. & R. 238, and Connelly v. Nedrow, 6 Watts 451, it was held that the omission of the purchaser to give a bond for the surplus of the bid over taxes and costs, is fatal; and that even payment of the whole bid to the treasurer is not sufficient. So in Bartholomew v. Leach, 7 Watts 472, it was determined that if the surplus bond contains no description of the land sold, it is fatal to the sale. In Coney v. Owen, 6 Watts 435, it was held that a sale for taxes actually assessed upon donation land, during the life of the soldier, is void; the soldier being entitled to exemption from taxes on such land during his lifetime. There was jurisdiction to sell in all these cases; in the soldier's,

general jurisdiction, and in the others, specific jurisdiction, yet the sale was held void, for what may be termed fatal irregularities. The case before us must be determined, therefore, upon other considerations than the mere words of the act.

It must be conceded that the payment of taxes is a duty, and a failure to perform it is the fault of the owner. But payment is one thing, and the steps leading to it are another. For the latter, the owner is not responsible. He cannot assess himself, or know what is charged against him. He must await the action of the agents of the law. He cannot pay until he is informed of what he is to pay. To perform the duty of payment he must apply to the treasurer for the taxes charged against his land. If this officer fail to give him the information on demand, on what just principle shall it be said he has not performed his duty? It is said, there are the tax books open to inspection, let him search them. But this is neither his business nor his duty. As was said in Dietrich *v.* Mason, 7 P. F. Smith 40, the treasurer is the legal custodian of the books and entries of the taxes necessary to show the sum to be tendered. This information it is his duty to give, and he cannot lay the books before the owner, and compel him to search for himself. The knowledge of the latter may be inadequate to find what he needs. If then the owner pays all the taxes stated by the treasurer, he has done his whole duty. He can do no more: Baird *v.* Cahoon, 5 W. & S. 540; Laird *v.* Hiester, 12 Harris 464. His claim to be protected against a sale of his land for taxes he stood ready to pay, but which the proper officer has failed to present to him on demand, is quite as great as that of the purchaser to be protected against the act of the same officer in making a sale for taxes actually paid. Indeed, his equity is greater, for he has a prior title to the land, which has been wrongfully exposed to sale for an unknown trifle of tax. He would lose a valuable property, sold for no real equivalent, while the purchaser pays but a trifle of tax and costs, which, in most instances, he can have returned to him if the sale be void. In point of want of knowledge they stand upon a par; the owner's ignorance of the tax being the equivalent of the purchaser's ignorance of the attempt to pay it. As a matter of fact, too, purchases at tax sales are known to be full of risk, and rarely more than a tithe of the value of the land is bid. It is but just, then, that a bonâ fide attempt to pay all the taxes, frustrated by the fault of the treasurer, should stand as the equivalent of an actual payment. It is an almost universal rule, which substitutes a tender for performance, when the tender is frustrated by the act of the party entitled to performance.

It is conceded that a similar offer to redeem land already sold for taxes, frustrated by a similar neglect of the treasurer, will stand good as a redemption. This has been too often decided to be denied: Bubb *v.* Tompkins, 11 Wright 359; Price *v.* Mott, 2

P. F. Smith 315; Dietrich v. Mason, 7 Id. 40; Lamb v. Irwin, 19 Id. 436; Halsey v. Blood, 5 Casey 319. But it is said, that in the case of redemption, a duty lies on the treasurer to furnish the means of ascertaining how much shall be paid. Yet, wherein lies the difference? We have shown that the duty is precisely the same. A man cannot pay his taxes, without a knowledge of what they are, better than he can pay the redemption money without knowledge of what it is. If there be a difference, it is in favor of. the owner, who goes to pay before sale, for he is in no fault whatever, while he who suffers his land to be sold is in fault, and redemption becomes his necessity. Here the whole fault was with the treasurer. The road tax for 1850 on the Matthew Smith tract was certified into the treasurer's office, on the 20th of January 1852. It was within the treasurer's official knowledge on the 30th of April 1852, the day when he gave his receipt for all the taxes assessed and due on the Smith tract.

The only inquiry remaining on this branch of the case is, whether the court was justified in considering the treasurer's statement of account of the taxes, and his receipt of April 30th 1852, sufficient evidence on their face, that Charles S. Coxe, the trustee, called on the treasurer, and offered to pay all the taxes on the Matthew Smith tract. The paper is headed: "An account of all taxes assessed and unpaid on the land mentioned below, situate in Union and Bush townships, in Schuylkill county, the property of Charles P. Coxe, trustee of the estate of Tench Coxe, Esq., deceased." In this paper the Matthew Smith tract is certainly and particularly set forth, and opposite to it, in the tax columns for 1850 and 1851, are placed the county and state taxes, but no road taxes, a blank being left in the column of road taxes. The receipt at the bottom is in these words: "Received, April 30th 1852, of Charles S. Coxe, Esq., trustee of the estate of Tench Coxe, Esq., deceased, two hundred and thirty dollars and seventeen cents, in full, for the taxes, interest and costs, upon the several tracts, parts of tracts, and parcels of unseated land above mentioned, the property of the said Charles S. Coxe, Esq., trustee of the estate of Tench Coxe, Esq., deceased, and that sum being all the taxes assessed and now due on the said unseated land, with the interest and costs thereon." The receipt was signed by the treasurer, G. D. Bower, and on the same day acknowledged by him before an associate judge of Schuylkill county. This paper is very formal, and in the absence of evidence to impugn its correctness, is certainly very clear evidence to any reasonable mind, that Mr. Coxe called on the treasurer for an account of all the taxes then assessed and due on his lands, and paid all that was demanded of him by the treasurer. No one, in. view of the paper, can doubt that the omission of the road tax was the fault of the treasurer, and that the failure to pay it was no fault of Mr. Coxe.

[Breisch *v.* Coxe.]

The next question is, whether the limitation of five years, contained in the third section of the Act of 3d of April 1804, 4 Sm. Laws 202, is a bar to the plaintiff's recovery ? That the limitation is a bar in all cases of sales void for irregularity is well settled, and it applies to sales made since the Act of 1815 : Bradford *v.* Dornseiff, 2 Penna. 503 ; Ash *v.* Ashton, 3 W. & S. 510 ; McCall *v.* Himebaugh, 4 Id. 164 ; Robb *v.* Bowen, 9 Barr 71 ; Burd, Ex'r, *v.* Patterson, 10 Harris 219 ; Iddings *v.* Cairns, 2 Grant 88 ; Rogers *v.* Johnson, 17 P. F. Smith 43 ; Johnston *v.* Jackson, 20 Id. 164. But a distinction is stated in Rogers *v.* Johnson, *supra*, between a sale absolutely void from a want of jurisdiction to sell, and one merely void because of a fatal defect in the proceeding. In one case, the treasurer has no authority whatever to make a sale ; in the other he has ; and he errs only in the proceeding in which he exercises his authority. The owner is not bound to take notice of the former, for it is not to be presumed that an officer will do an act he has no authority to do ; and he cannot be implicated in the consequences of the act where there is no power to bind him. But where there is authority to do the act, the owner must take notice, for then he becomes implicated in the consequences. Hence, if he would take advantage of an error of procedure, or an irregularity in the execution of the power, he must do it in due course of law, and time is part of the course prescribed. It was said, in Laird *v.* Hiester, 12 Harris 663, as a result of the cases, that " the authority of a treasurer to sell unseated land for taxes depends on the facts, that the land was unseated at the time of the assessment ; that a tax appeared to have been, and was in fact, assessed upon it by the proper officer ; and that the tax has been due for one whole year, and remains unpaid. The absence of either of these facts involves exemption from the penalties of the Acts of 1804 and 1815." If, then, a bonâ fide offer to pay all the taxes of an unseated tract, frustrated by the negligence of the treasurer to give information of all the taxes charged against the land, is the legal equivalent of actual payment of the taxes in taking away jurisdiction to sell, as we have seen it is, the conclusion follows that the limitation of five years in the Act of 1804 does not apply to such a case. The want of authority to sell is as clear as when the taxes have been actually paid, and the owner is not bound to presume a sale, and follow up its consequences within five years. It is not a mere irregularity, which leaves the limitation in the Act of 1804 in full force. All the hardship attributed to the purchaser's want of knowledge is as fairly imputable to a case of actual payment as it is to one of tendered payment. In neither does the fact appear so as to challenge his notice. In either case it is just as difficult for counsel to know the undiscovered defect. It is simply a want of knowledge of a fact, not of the law. If the land turn out to have been seated the effect is the same,

[Breisch v. Coxe.]

and counsel cannot be expected to know it. It is, therefore, not a just ground of complaint that counsel cannot know how to advise as to such a title. No counsel is responsible for advice in respect to unknown facts; but he can tell his client of these risks he must run.

Upon a consideration of the whole case we discover no error, and the judgment is therefore affirmed.