### MILLER v. O'BOYLE et al.

(Circuit Court, W. D. Pennsylvania. August 26, 1898.)

1. PARTNERSHIP—CONTRACT CREATING—RELATIONS OF PARTNERS.

An agreement between three persons in regard to the carrying out of a contract for public work taken by them, by which two agree to furnish all the money needed, and the profits are to be divided, creates a partnership between them in relation to the contract, and each owes to the others the utmost good faith.

2. SAME—FRAUDULENT ACTION OF PARTNER—INJUNCTION.

Plaintiff and defendant entered into a partnership for the purpose of carrying out a contract for public work awarded to them as associates by a Mexican city. Defendant, who was to furnish the money for the enterprise, went to Mexico for the purpose of closing up the contract and furnishing the required bonds. Owing to the receipt of a false report affecting the financial standing of plaintiff, the authorities refused to close the contract with him as a party. Defendant, without advising plaintiff of the reasons for such refusal, and without plaintiff's knowledge, obtained a contract for the work in his own name. *Held*, that he held such contract for the partnership, and that plaintiff was entitled to a preliminary injunction to prevent his exclusion from participating in the management of the business.

3. SAME—SUITS BETWEEN PARTNERS—INJUNCTION.

The fact that a dissolution is not sought does not deprive a court of the power to grant an injunction to restrain one partner from violating the rights of his co-partner.

Sur Motion for Preliminary Injunction.

Watson & McCleave, for complainant.
Warren & Knapp and Knox & Reed, for defendants.

ACHESON, Circuit Judge. In the fall of 1897, the plaintiff, Lemuel E. Miller, and M. W. O'Boyle, one of the defendants, associated themselves together for the purpose of procuring a contract for building a sewerage system in and for the city of Guadalajara, in the state of Jalisco, Mexico; and they submitted a proposal for such contract to the government of the state of Jalisco. That proposal was accepted on December 27, 1897, in and by letter of that date, addressed to Miller & O'Boyle, signed by Luis C. Curiel, the governor of Jalisco. The contract thus entered into was of a preliminary character, and stipulated for "such modifications as government may deem necessary" in the engineer's "plans and details," submitted with the proposal of Miller & O'Boyle. On January 18, 1898, an agreement in writing, in respect to "the Guadalajara contract," was entered into and signed by the plaintiff and the two defendants, M. W. O'Boyle and John H. Foy, whereby it was agreed between them that the defendants should "do all the financiering to carry on the work to completion," and make the stipulated deposits required by the government of Jalisco to secure the faithful performance of the contract, and that the plaintiff should

have 34 per cent. of the net proceeds of the contract, and that the defendants should have 66 per cent. thereof.

Undoubtedly, the plaintiff and the defendants became and were partners in this enterprise. In respect to this sewerage contract the plaintiff and the defendants stood in confidential relations to each other, and they owed to each other the most scrupulous good faith. Bates, Partn. § 304; Oil Co. v. Densmore, 64 Pa. St. 43–50; Yeoman v. Lasley, 40 Ohio St. 190.

In the latter part of January, 1898, the defendant O'Boyle went to the city of Guadalajara to make the required deposits of money, and to execute the final agreement with the government of Jalisco for the work. The plaintiff had previously left his power of attorney with his attorney at law, Luis Perez Verdia, of the city of Guadalajara, authorizing him to sign and execute the final contract for him (the plaintiff); and this was known to O'Boyle. Verdia acted on behalf of the defendant O'Boyle in all that afterwards took place at Guadalajara with respect to the contract for this work. About the time O'Boyle reached the city of Guadalajara, or shortly thereafter, Luis C. Curiel, the governor of Jalisco, received two letters from J. Henry Edmunds, of Cape May, N. J., inquiring into the plaintiff's connection with this sewerage contract, representing that the plaintiff was indebted to him, and signifying his intention to attach or proceed against the plaintiff's interest in the contract. At an interview between the governor, Luis C. Curiel, and O'Boyle and his attorney and representative, Verdia, held on the evening of February 8, 1898, the governor announced that, on account of the claims of the plaintiff's creditors, he had decided not to close the contract with the plaintiff as a party thereto, and therefore declared that the preliminaries had come to an end with Messrs. Miller & O'Boyle as associates. On the day following this announcement, namely, February 9, 1898, negotiations were commenced between the governor and O'Boyle, through the medium of Verdia, for a contract for the contemplated sewerage work, to be taken by O'Boyle in his own name. From exhibits attached to the answer it appears that on February 10th Verdia addressed a letter to O'Boyle, stating that the governor "has written to me, offering the business to you only"; and on February 12th O'Boyle wrote to Verdia, expressing his consent to this disposition of the matter. These negotiations proceeded until March 12th, when the contract for this work between the governor and O'Boyle was definitely settled. Subsequently the contract was formally awarded to O'Boyle. This contract is substantially the same as the contract of December 27, 1897. O'Boyle claims to hold the contract for himself and his co-defendant, Foy, to the exclusion of the plaintiff.

The evidence shows that the representations contained in the letters of J. Henry Edmunds to the governor of Jalisco were untrue. The plaintiff was not indebted to Edmunds. On the contrary, Edmunds was indebted to the plaintiff. There was no just reason whatever for excluding the plaintiff from the Guadalajara contract. Had the real facts been known to Gov. Luis C. Curiel, it is not to be doubted, upon the proofs now before me, that the original contract of December 27, 1897, would have been carried out. That the plaintiff

was not afforded timely opportunity of defending himself against unjust aspersions was due to O'Boyle's inexcusable neglect of the duty he owed to his absent partner. So much, at least, must be said. Neither O'Boyle nor Verdia took any step to procure the presence of the plaintiff at Guadalajara. They did not inform the governor that Verdia held a power of attorney, authorizing him to act for the plaintiff in this matter. Thus, they left the plaintiff's absence unexplained, confirming the governor in his impression that it was due to pecuniary embarrassment. They failed fully to apprise the plaintiff as to the true situation. They gave him no hint whatever that new negotiations between the governor and O'Boyle individually had been opened and were pending. According to the plaintiff's affidavit, the only information he received was a telegram under date of February 11th, sent to him at Philadelphia, from Pittston, Pa., reading thus: "O'Boyle just telegraphed that the contract is lost. Have no mail. [Signed] John H. Foy." The defendants state in their answer that on February 11th Verdia sent a telegram from Guadalajara to the plaintiff, at Philadelphia, as follows: "Governor absolutely refuses to make contract. See letter. O'Boyle met all conditions required. Your creditors the cause. [Signed] L. P. Verdia." If this telegram was sent, it was a very misleading message, for, while announcing that the "governor absolutely refuses to make contract," it suppresses the fact that negotiations were then on foot to secure the contract for O'Boyle, to the exclusion of the plaintiff. The plaintiff swears that he never received any letter from Verdia, and I see no reason to doubt the truth of his statement.

It is certain that O'Boyle entered into the final contract, in his own name, secretly, and without the knowledge of the plaintiff, as the bill alleges. The answer, indeed, contains the following cautious and qualified denial:

"It is not true that the defendants entered into any negotiations with the government of Jalisco secretly, and without the knowledge of your orator, the same being known to his counsel and attorney in fact, Luis Perez Verdia, throughout all the negotiations with reference thereto."

But the truth is, Verdia acted throughout these negotiations as the counsel and attorney of O'Boyle, and in his interest alone. Now, O'Boyle went to Guadalajara as the representative of the partnership of Miller & O'Boyle, to consummate the municipal sewerage contract. In this matter he was the trusted agent of the plaintiff. If it was open to him at all to throw off his agency, and acquire the contract for himself, he could only do so after the frankest disclosures to the plaintiff of all the circumstances, and distinct notice of his intention to act in his own behalf, to the exclusion of the plaintiff. The observations of Chief Justice Gibson, in Bartholemew v. Leech, 7 Watts, 472, 473, in respect to the incapacity of a confidential agent to acquire title in hostility to his principal, are very pertinent here:

"To capacitate him as a purchaser on his own account, he must have explicitly resigned his trust. The most open, ingenuous, and disinterested dealing is required of a confidential agent while he consents to act as such; and there must be an unambiguous relinquishment of his agency before he can acquire a personal interest in the subject of it. To leave a doubt of his

position in this respect is to turn himself into a trustee. It is unnecessary to recur to authority for a principle so familiar or so accordant with common honesty."

O'Boyle's partnership relation to the plaintiff precludes him from holding this contract for his own benefit or appropriating its advantages to himself and his co-defendant, to the exclusion of the plaintiff. Lacy v. Hall, 37 Pa. St. 360; Bast's Appeal, 70 Pa. St. 301; Ambler v. Whipple, 20 Wall. 546–557; Pearce v. Ham, 113 U. S. 593, 5 Sup. Ct. 676. It is not material here that the governor of Jalisco refused to recognize the plaintiff in the final contract. The partner in a firm who takes a renewal of a lease to the firm in his own name holds it for the firm, and that even though the lessor has refused to renew the lease to the old lessees. Featherstonhaugh v. Fenwick, 17 Ves. 298, 313, cited with approval in Lacy v. Hall, 37 Pa. St. 365. The court said:

"Then, does the circumstance that Wilkinson [the lessor] was unwilling to admit the plaintiff into the agreement make any difference? I think it does not, as it is no injury whatsoever to him, or any other of the trustees of Lambton, to declare the defendants trustees of this property for the plaintiff."

The principle is applicable to this case.

As, upon the indisputable facts, O'Boyle must be adjudged to hold the contract for the benefit of the parties to the agreement of January 18, 1898, it is not necessary to consider whether J. Henry Edmunds and the defendants originally acted in collusion. Proof of a previous conspiracy is not necessary to entitle the plaintiff to relief. Good faith forbids the defendants to avail themselves, to the plaintiff's prejudice, of any benefit resulting from the indefensible interference of Edmunds in this business. To accept the fruits of his unjustifiable conduct would be to make the defendants partakers in his wrong.

Relief by injunction is a proper and appropriate remedy here. The exclusion of a partner from his rightful share in the profits or management of the business, and from his right to inspect the books and to be informed of the state of the accounts, is ground for an injunction. Bates, Partn. § 991; Marble Co. v. Ripley, 10 Wall. 339, 351. In this last-cited case, the court said:

"Any unauthorized attempt by one to oust the other from the position and rights assigned to him by the contract was therefore not only a breach of their agreement, but a fraud upon the relation which they have assumed to each other. Such a wrong it is the province of a court of equity to prevent. A chancellor will interfere by injunction to restrain one partner from violating the rights of his co-partner, even when the dissolution of the partnership is not necessarily contemplated."

This, I think, is a case for preliminary relief. The facts upon which the plaintiff's rights depend are established beyond doubt. He ought not to be postponed until the end of this litigation, which must be prolonged, as no final decree can be entered until the work under the contract shall have been completed, and the business wound up. The plaintiff needs prompt relief. It is most important to him that he be permitted to inspect the books of the concern, and to be kept informed as to the state of the accounts and the progress of the business. By no color of right can the defendants exclude the plaintiff

from all participation in the management of the business. This court, it is true, cannot bind the municipal authorities of Guadalajara by its decree, for the city is not a party to this suit. It can, however, consistently with the proper execution of this work, protect the plaintiff from the wrongful acts of the defendants.

I have not overlooked the statement in the answer that the present plans and specifications for the work "contemplate a different contract entirely from the contract in which the plaintiff was to participate." The defendants, however, have failed to particularize the differences. The two contracts seem to be substantially alike. Moreover, the contract of December 27, 1897, as we have seen, contemplated changes in the plans and specifications; and it does not appear that any greater changes were made than were thus stipulated for. In this connection it may not be amiss to note that the written contract between the plaintiff and defendants, of January 18, 1898, provides that "any further work or contracts obtained in the city of Guadalajara" shall be divided between them in three equal parts. A preliminary injunction will be awarded. Let counsel prepare the decree.