## Hutton *v.* Seitz, Appellant.

Argued October 7, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

222

*Robert D. Noel, Jr.,* with him *H. A. Heilman,* for appellant.

*W. Davis Graham,* with him *Robert E. Ashe,* for appellees.

OPINION BY MR. JUSTICE ARNOLD, January 5, 1954:

This is an action of ejectment brought by the owner of a tax title resulting from a treasurer's sale (taking place in 1946), against the owner of the paper title alleged to have been vitiated by the treasurer's sale. The facts are not in dispute. It is admitted that all the incidents concerning the assessment, return and sale by the treasurer for delinquent taxes were regular. The sole irregularity alleged is that the surplus bond given by the purchaser to the treasurer was void because the bond did not specify the location or in any manner describe the lands sold by the treasurer. The court below refused to hold the same void and entered judgment for the plaintiff, and the defendant appealed. The judgment will be affirmed.

The appellant stands on the case of *Bartholemew v. Leech,* 7 Watts 472, in which the Supreme Court held that since "the surplus bond contains no specification of the land, *and being referable to nothing in particular,* it could neither create a lien nor give notice of one," and that such defect was fatal to the proceedings. (Emphasis supplied.)

The *Bartholemew* case was decided under the Act of 1804, 4 Sm. L. 201, as amended by the Act of 1815, 6 Sm. L. 299, referring to the sale of unseated lands for taxes. Section 3 provides for the giving of a surplus bond by the purchaser to the sheriff or the coroner (who was authorized to make said sales), the latter officer being required to file the same forthwith in the office of the prothonotary of the proper county. The Act of 1804 was amplified by the Act of 1815 but the provision as to surplus bonds was unaffected. The Act of 1815 was made applicable to the sale of seated lands by section 41 of the Act of 1844, P. L. 486. In *Day v. Swanson,* 236 Pa. 493, 84 A. 958, the Municipal Tax Lien Act of 1901, P. L. 364, was held to repeal the Act of 1844 so far as seated lands were concerned. There was then no method for return and sale of seated lands until the Act of 1913, P. L. 285, which set up an undetailed procedure somewhat similar to the Act of 1815. The Act of 1929, P. L. 1684, also providing for sales for delinquent taxes, was repealed by the Act of 1931, P. L. 280, as the result of suggestions and criticisms throughout the Commonwealth concerning the Act of 1929. It was under the Act of 1931, as amended, that the present tax sale was had.

The Act of 1931 created an entirely new system for the sale of seated lands for delinquent taxes, and repealed all acts inconsistent therewith. Therefore subsequent to the Act of 1931 all proceedings for the sale of seated lands for delinquent taxes were embodied in a code which was all-embracing, and which displaced all of the old statutory law on the subject.

The Act of 1931, as amended, provides that upon return to the treasurer by the local tax collectors of lands upon which taxes have not been paid, the county treasurer shall expose said lands for sale after due advertisement and notice. It then provides in §12, as

amended by the Act of 1939, P. L. 498, §7, 72 PS §5971L, that the treasurer shall make a *report and return to the* court of common pleas, wherein he shall *"set forth a brief description of the land or property sold, the name of the person (where known) in which the same is assessed, the amount of tax and the year for which the same is assessed,* . . . *the name of the purchaser,* and the price for which each respective property was sold. Upon the presentation of said report or return, if it shall appear to said court that such sale has been regularly conducted . . . the said report and the sale so made shall be confirmed nisi. The county treasurer shall . . . [give newspaper notice] stating that the report. . . with respect to any such sale or sales for delinquent taxes has been presented to the court. . . and that exceptions thereto may be filed within sixty days. . . ." (Emphasis supplied). There were no exceptions filed to the instant treasurer's sale.

The bond for surplus purchase money is provided for under §13 of the Act (72 PS §5971m). It provides, contrary to the Act of 1815, that the bond for the surplus money shall be filed with the treasurer, whose duty it is *"to forthwith file said bond in the office of the prothonotary . . . at the number and terms where said report and return* [of the treasurer concerning the tax sales] *is filed;* and the surplus bond filed as aforesaid, from the time of the date of the deed for property thus sold, shall bind, as effectually and in like manner as judgments, the land by said treasurer sold into whose hands or possession it may come. . ." (Emphasis supplied). We are therefore constrained to affirm the court below for the reason that the surplus bond given by the purchaser at the treasurer's sale was filed with the treasurer, who in turn filed it with his report of the treasurer's sales in the

office of the prothonotary. Thus when the whole record was offered in behalf of the tax title, it became apparent that the report of the treasurer filed with the surplus bond contained a specification of the land. Indeed the instant case stands on the statement in the Bartholemew case: "The surplus bond contains no specification of the land, *and being referable to nothing in particular, it could neither create a lien nor give notice of one.*" (Emphasis supplied). In the present case the bond is referable to the treasurer's report, and the two together contain a specification of the land and the record (the whole record) is therefore unimpeachable. As to the sufficiency of the description of the assessments and returns see *Humphrey v. Clark,* 359 Pa. 250, 58 A. 2d 836.

In addition, the defendant had notice and full knowledge of the proceedings prior to the sale, and this is not a case of stripping the landowner of his property at an entirely unconscionable price, the instant property being sold for more than the assessed valuation. The defendant deliberately failed and refused to pay the taxes assessed against her property and deliberately failed and refused to redeem the property after the treasurer's sale had been made. In the words of the court below, we conclude that the intention of the Legislature was to simplify tax sales, and that there can be no doubt that the land was sufficiently described in the proceeding before mentioned to cause a lien to exist upon it, as a result of the statutory requirement for filing of the surplus property bond to the same proceedings as that of the treasurer's report and return.

Judgment affirmed.